UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X

MARK JONES,                              :

                          Petitioner,    :        **MEMORANDUM AND ORDER**

            - against -                  :

                                         :        1:07-cv-951-ENV
THOMAS POOLE,                            :

                          Respondent.    :

------------------------------------------------------------X

VITALIANO, D.J.

      Mark Jones, incarcerated on 2002 convictions for murder in the second degree and criminal

possession of a weapon in the second degree, has petitioned this Court for a writ of habeas corpus,

pursuant to 28 U.S.C. § 2254, contending that: (i) the consolidation of two indictments for trial was

improper; (ii) the prosecutor's comments in summation deprived him of a fair trial; and (iii) his trial

counsel was constitutionally ineffective. For the reasons set forth below, the writ is denied and the

petition is dismissed.

## Background

      Shortly before 9:00 p.m. on November 21, 2001, four young men – Jelani Isaac, Ralik

Hansen, Simmy Fraser, and Ameer Taylor – met up at a McDonald's located at the intersection of

Rockaway Parkway and Conklin Avenue in Brooklyn, New York. The four were fraternizing on the

street corner when they were suddenly approached from behind by Divine Sawyer, whom they had

never seen before, and brothers Mark and Tariq Jones, known in their neighborhood as the Trini

brothers. Without any provocation, Sawyer harassed Fraser, pushed him, and snatched a gold chain from his neck. Petitioner, who smelled of alcohol, subdued Taylor and Hansen, holding an object that felt like pistol to the back of Taylor and saying, "don't move or I'll pop you," while simultaneously holding his fingers, which felt like a gun, to the back of Hansen. Petitioner then handed a black nine-millimeter gun to Sawyer, saying, "just shoot that nigger already." Sawyer then fired approximately three shots, one of which struck Jelani Isaac in the chest, killing him.

Police responded quickly to the crime scene, where a growing crowd gathered around Isaac's lifeless body. Hansen and Taylor gave the responding officers descriptions of the assailants, specifically identifying, by name, the Trini brothers, who were already known to some of the officers. Hansen and Taylor then helped the officers to canvass the surrounding area. At approximately 9:20 p.m., several blocks from the crime scene, Taylor identified the shooter, Sawyer, whom police quickly apprehended. Just minutes later, Tariq Jones was also apprehended upon identification by Hansen. Mark Jones was arrested later in the night after walking into the 69th police precinct in an apparently drunken state and belligerently asking about his brother.

Kings County Indictment Number 8949/2001 charged Sawyer and the Jones brothers with murder in the second degree, N.Y. Penal Law § 125.25(3), two counts of robbery in the first degree, N.Y. Penal Law § 160.15(1), (2), robbery in the second degree, N.Y. Penal Law § 160.10(1), robbery in the third degree, N.Y. Penal Law § 160.05, criminal possession of a weapon in the second degree, N.Y. Penal Law § 265.03(2), and criminal possession of a weapon in the third degree, N.Y. Penal Law § 265.02(4). Sawyer was named alone in four separate counts, tried before a separate jury, and convicted of murder in the first degree, N.Y. Penal Law § 125.27(1)(a)(vii), attempted murder in the

2

second degree, N.Y. Penal Law § 110.00, 125.25(1), and criminal possession of a weapon in the second degree, N.Y. Penal Law § 265.03(2).

In pretrial proceedings, the state sought to consolidate Kings County Indictment Numbers 8249/2001 and 8949/2001 for trial. The earlier indictment charged only Tariq Jones with two counts of illegal weapons possession in connection with an October 7, 2001 shooting. Ballistics evidence established that the same nine-millimeter gun had been used in both crimes, and Tariq Jones had confessed to possessing the weapon immediately before the October 7th shooting. As to the November 21st incident, the Jones brothers were both pursuing alibi defenses, and accordingly, the trial court reasoned that evidence of Tariq Jones's prior possession of the murder weapon was admissible on the issue of identity as to both defendants. Accordingly, the court, apparently in the interest of judicial economy, consolidated the indictments.

The evidence at trial of petitioner's guilt was overwhelming. Immediately following the incident, Fraser, Taylor, and Hansen all positively identified petitioner as one of the three perpetrators. The three young victims gave similar detailed accounts of the crime, consistent with the crime scene and medical evidence, which included petitioner handing Sawyer a nine-millimeter gun and exhorting him to shoot Fraser. Ballistics evidence linked the firearm used in the shooting to Tariq Jones, and when police apprehended Divine Sawyer, he was in possession of a gold chain belonging to Fraser.

The Jones brothers were convicted of felony murder, N.Y. Penal Law § 125.25(3), and criminal possession of a weapon in the second degree, N.Y. Penal Law § 265.03(2), and Tariq Jones was acquitted on charges stemming from the prior October 7th shooting. Petitioner was

3

subsequently sentenced to an indeterminate term of imprisonment of 25 years to life on the felony murder conviction to run concurrently with a term of imprisonment of fifteen years on the weapons possession conviction.

Petitioner appealed his conviction to the New York State Supreme Court, Appellate Division, Second Department, arguing that: (i) the consolidation of two indictments for trial was improper; (ii) the prosecutor's comments in summation deprived him of a fair trial; and (iii) his trial counsel was constitutionally ineffective. On November 14, 2005, the Appellate Division affirmed petitioner's conviction. People v. Mark Jones, 23 A.D.3d 496, 803 N.Y.S.2d 911 (2d Dep't 2005). The court held that petitioner had failed to preserve his improper consolidation claim for appellate review, but that regardless, he was not prejudiced by the consolidation. Id. Petitioner's contentions regarding the prosecutor's summation statements were held to be either unpreserved for appellate review, without merit, or harmless. Id. Finally, the court held that petitioner was not denied the effective assistance of trial counsel. Id. On April 12, 2006, on behalf of the New York State Court of Appeals, Associate Judge Susan Phillips Read denied petitioner's application for leave to appeal to that court. People v. Mark Jones, 6 N.Y.3d 849, 816 N.Y.S.2d 755, 849 N.E.2d 978 (2006).[1] The instant petition for a writ of habeas corpus was timely filed with this Court on February 28, 2007.

### Standard of Review

Under the Antiterrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat.

---

[1] On November 14, 2005, the Appellate Division also affirmed Tariq Jones's conviction, People v. Tariq Jones, 23 A.D.3d 496, 803 N.Y.S.2d 920 (2d Dep't 2005), and Jones was subsequently denied permission to appeal further by the New York State Court of Appeals. People v. Tariq Jones, 6 N.Y.3d 835, 814 N.Y.S.2d 83, 847 N.E.2d 380 (2006).

4

1214, 1219 (1996) ("AEDPA"), a writ of habeas corpus shall not issue with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication (1) was contrary to or involved an unreasonable application of clearly established federal law, as determined by the United States Supreme Court; or (2) was based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d). In Williams v. Taylor, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000), the Supreme Court delineated an analytical framework to guide review of habeas claims, identifying the need to treat independently the "contrary to" and "unreasonable application" clauses of section 2254(d)(1). With respect to the "contrary to" clause, a writ may issue if the state court decision "contradicts the governing law set forth in [Supreme Court] cases" or arrives at a different conclusion from the Supreme Court on "materially indistinguishable" facts. Id. at 405-06. With respect to the "unreasonable application" clause, a writ may issue if the state court "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. The "unreasonable application" inquiry, however, is limited, and the habeas court may only issue a writ where the state court's application of Supreme Court precedent was "objectively unreasonable." Id. at 409. "Some increment of incorrectness beyond error is required" for a decision to be considered objectively unreasonable, though the increment need not be great. Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000).

**Discussion**

I.    *Consolidation of Indictments*

Before a federal court may grant habeas relief to a petitioner in state custody, the petitioner

5

must first exhaust his state court remedies. 28 U.S.C. § 2254(b)(1). Concerns of comity lie at the core of the exhaustion requirement, as it would be unseemly for federal courts to review and overturn state court convictions before allowing the state appellate process a fair opportunity to correct any error. O'Sullivan v. Boerckel, 526 U.S. 838, 844-45, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999); Coleman v. Thompson, 501 U.S. 722, 731, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). "To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." Baldwin v. Reese, 541 U.S. 27, 29, 124 S.Ct. 1347, 158 L.Ed.2d 64 (2004). To fairly present a constitutional claim to a state court, a petitioner need not cite the United States Constitution chapter and verse; it is enough for the petitioner to alert the state court to the federal nature of the claim through "(a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation." Jackson v. Edwards, 404 F.3d 612, 618 (2d Cir. 2005) (citing Daye v. Attorney General, 696 F.2d 186, 194 (2d Cir. 1982) (en banc)).

This presents a case in which the petitioner unsuccessfully argued his claim regarding the consolidation of two indictments to the state courts as a state law claim and now attempts to relitigate that claim in federal court as a due process claim. In state court, petitioner claimed only that the trial court erred when it applied the wrong New York statute – N.Y. Crim Proc. Law § 200.20 rather than § 200.40 – in determining to consolidate two indictments for trial. Petitioner's

6

brief to the Appellate Division references only state statutes and a state law treatise. It cites neither

state nor federal caselaw, neither the New York nor United States Constitution, and it fails to even

assert that petitioner was deprived of a fair trial. Cf. Moore v. West, No. 9:03-cv-53, 2007 WL

1302426, at *12 n.20 (N.D.N.Y. May 1, 2007). Most tellingly, the state court brief makes light of

the fact that New York law is more stringent than federal law in its requirements to consolidate the

indictments of disparately accused defendants. This Court, accordingly, concludes that a fair reading

of the state court briefs would simply not have prompted a reasonable state jurist to examine the

federal constitutional law in this area. Concerns of comity caution against the grant of habeas relief

on a constitutional claim that petitioner never asked the New York courts to address. See Duncan

v. Henry, 513 U.S. 364, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam).

In any event, petitioner's due process claim would fail on the merits. The United States

Supreme Court's decision in United States v. Lane, 474 U.S. 438, 106 S.Ct. 725, 88 L.Ed.2d 814

(1986) is the clearly established federal law that governs petitioner's improper consolidation claim.

In Lane, the Court held that "[i]mproper joinder does not, in itself, violate the Constitution. Rather,

misjoinder would rise to the level of a constitutional violation only if it results in prejudice so great

as to deny a defendant his Fifth Amendment right to a fair trial." Id. at 446 n.8; Herring v.

Meachum, 11 F.3d 374, 377 (2d Cir. 1993).

It is critical to note that petitioner never appealed the state trial court's decision that evidence

pertaining to the October 7, 2001 shooting involving his brother, Tariq, was admissible as evidence

of petitioner's involvement in the November 21, 2001 murder of Jelani Isaac; petitioner, instead,

appealed only the trial court's separate decision to try the charges stemming from the earlier incident

at the joint trial. This point is of central significance because it was the trial court's first unappealed decision, regarding the admissibility of evidence relating to the first incident, that was the source of any prejudice of which petitioner now complains. As a result of that first ruling, evidence of the October 7th incident would have been admissible against petitioner regardless of whether he was tried jointly with his brother. Because petitioner never appealed the trial court's admissibility ruling in state court, it is not properly before this Court. Even if it were, this Court would not find that the trial court's decision was contrary to or an unreasonable application of clearly established federal law. The trial court was faced with a situation in which petitioner and his brother were identified as the perpetrators of the November 21, 2001 murder of Jelani Isaac, and both had asserted alibi defenses. The trial court reasoned that the prosecution could use evidence of the earlier shooting to link Tariq – and more tangentially, petitioner – to the murder weapon used in the later shooting. The evidence of the October 7th shooting was thus highly probative as to the identity of the November 21st perpetrators. Though the evidence may have been more probative with regard to Tariq than petitioner, its potential to prejudice the jury was not as great with regard to petitioner, as he was not implicated in the October 7th incident. This Court, then, would not find unreasonable the trial court's decision to admit evidence of the October 7th shooting against petitioner.

Petitioner, moreover, has failed to show that he was otherwise prejudiced by the trial court's decision to consolidate the two indictments for trial. The two separate criminal incidents tried were straightforward and easily segregable, and the October 7th incident involved only defendant Tariq Jones – a fact made clear by the trial judge, whose instructions and verdict sheet clearly differentiated the separate offenses and charges. Finally, the jury apparently had no difficulty in

distinguishing the two separate indictments, as it acquitted Tariq Jones of charges stemming from the October 7th incident, while convicting him of charges arising from the November 21st incident. Cf. Herring, 11 F.3d at 378 ("Based on the instructions, the jury seems to have carefully evaluated the evidence on each count separately; it convicted petitioner on two of the counts, but acquitted him on the other two."); Brewer v. Portuondo, No. 01-cv-6118, 2003 WL 21845837, at *6 (E.D.N.Y. Aug. 6, 2003) ("The fact that the jury acquitted petitioner of the burglary relating to Silver suggests that the jury had no difficulty distinguishing between the evidence and issues of the two separate crimes."). Petitioner was not deprived of a fair trial by the consolidation of indictments, and habeas relief is, therefore, not warranted on this ground.

II.    *Prosecutorial Misconduct*

It is well-settled that a constitutional issue arises on a claim relating to a prosecutor's summation statements only when those statements are so egregious as to deny the criminal defendant a fair trial. Donnelly v. DeChristoforo, 416 U.S. 637, 643, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974); Sales v. Harris, 675 F.2d 532, 541 (2d Cir. 1982). Keeping in mind that prosecutors are "entitled to broad latitude in the inferences they may suggest to the jury during closing arguments," United States v. Suarez, 588 F.2d 352, 354 (2d Cir. 1978), a reviewing court must ask "whether the prosecutor's comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." Collins v. Artus, No. 05-cv-10070, 2007 WL 2045483, at *11 (S.D.N.Y. Jul. 18, 2007) (quoting Darden v. Wainwright, 477 U.S. 168, 181, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986)). This inquiry requires an examination into the effect of any misconduct within the context of the entire trial. DeChristoforo, 416 U.S. at 643. The Second Circuit, in reviewing claims arising

9

from a prosecutor's statements, examines "(1) the severity of any misconduct, (2) the measures taken to cure the misstatements, and (3) their likely effect on the outcome." Schicchi v. Ercole, No. 06-cv-3273, 2007 WL 837109, at *9 (E.D.N.Y. Mar. 18, 2007) (quoting United States v. Forlorma, 94 F.3d 91, 95 (2d Cir. 1996)).

In appealing his conviction to the Appellate Division, petitioner claimed that the prosecutor's statements in summation amounted to an *ad hominem* attack in which the prosecutor became an unsworn witness, proffered her personal opinion that petitioner was guilty, called petitioner a liar, and misstated various aspects of the record. The Appellate Division concluded that petitioner's claim was "either unpreserved for appellate review, without merit, or constituted harmless error in light of the overwhelming evidence of the defendant's guilt." People v. Mark Jones, 23 A.D.3d 496, 496, 803 N.Y.S.2d 911 (2d Dep't 2005) (internal citation omitted). There is no basis for a federal challenge to this decision.

The Appellate Division correctly found that much of petitioner's claim was unpreserved, as almost all of the prosecutor's comments were not objected to by petitioner's trial counsel. But to be clear for purposes of petitioner's ineffective assistance of trial counsel claim, *see infra*, objections by trial counsel would have made no difference. When a defendant testifies and offers an alternative account of events, his truthfulness becomes an issue central to the trial's resolution. The prosecutor must, in one way or another, argue that the criminal defendant is, in fact, a liar. Courts accordingly recognize that "[u]se of the words 'liar' and 'lie' to characterize disputed testimony when the witness's credibility is clearly in issue is ordinarily not improper unless such use is excessive or is likely to be inflammatory." United States v. Peterson, 808 F.2d 969, 977 (2d Cir. 1987); United

States v. Shareef, 190 F.3d 71, 79 (2d Cir. 1999) ("[I]t is not ordinarily improper for the prosecution to make temperate use of forms of the word 'lie' to highlight evidence directly conflicting with the defense's testimony, or 'to characterize disputed testimony' where credibility was clearly an issue, particularly where 'the prosecutor tied to the pertinent evidence of record' each instance in which the defendant supposedly 'lied' . . . ."); Bruce v. United States, No. 04-cv-3453, 2006 WL 1704473, at *7 (E.D.N.Y. Jun. 12, 2006) ("[A]lthough it may have been unseemly for the Government to call her a liar, it was not excessive or inflammatory, but rather a permissible way to characterize disputed trial testimony."). Here, the prosecutor permissibly attacked petitioner's credibility, pointing out the faults in his testimony and referring to them as lies. Some of the prosecutor's other statements in summation – e.g., that petitioner was "rugged and sick" – may have been inflammatory, but isolated inflammatory comments must be viewed in the context of an entire summation and trial. The prosecutor's statements here were not nearly inflammatory enough to raise questions about the trial's fundamental fairness. See Sales, 675 F.2d at 541-42 ("While two of the prosecutor's remarks may have been considered somewhat inflammatory, the closing argument as a whole did not approach the level described in Donnelly, *supra*, and did not deprive appellant of a fair trial."). Similarly, any misstatements by the prosecutor in summation regarding the evidence at trial were trivial and do not implicate the Fourteenth Amendment. Petitioner's claim is meritless.

III.     *Ineffective Assistance of Trial Counsel*

Petitioner claims, as he did on direct appeal, that his trial counsel was ineffective for failing to call an exculpatory witness, failing to request a jury charge on intoxication, and failing to object to various aspects of the prosecutor's summation. The Appellate Division rejected this claim on the

11

merits. People v. Mark Jones, 23 A.D.3d 496, 803 N.Y.S.2d 911 (2d Dep't 2005).

The United States Constitution provides that a criminal defendant "shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. The fundamental right to counsel is a substantive right ensuring not only that the criminal defendant has an attorney, but that he has one who performs in a reasonably effective manner. McMann v. Richardson, 397 U.S. 759, 771 n.14, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970); Lindstadt v. Keane, 239 F.3d 191, 198 (2d Cir. 2001). The primary purpose of this right is to "ensure a fair trial" and, accordingly, "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland v. Washington, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

A federal court considering a habeas petition based on trial counsel's ineffective assistance of counsel must determine whether the state court's determination was contrary to or an unreasonable application of federal law clearly established in Strickland v. Washington – precedent that "provides sufficient guidance for resolving virtually all ineffective assistance of counsel claims." Williams v. Taylor, 529 U.S. 362, 391, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). Under Strickland, a petitioner must first show that counsel's representation "fell below an objective standard of reasonableness" measured under "prevailing professional norms." Strickland, 466 U.S. at 688. The reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. The petitioner must also show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

12

would have been different." Id. at 694. A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." Id. at 694. Strickland imposes a heavy burden that, for habeas petitioners, has been "enhanced by the added hurdle posed by the highly deferential review accorded state court adjudications under" AEDPA. Eze v. Senkowski, 321 F.3d 110, 112 (2d Cir. 2003); Hemstreet v. Greiner, 491 F.3d 84, 89-90 (2d Cir. 2007).

The trial record shows that petitioner's attorney performed adequately and provided meaningful representation at every stage of the proceedings. Counsel filed an omnibus pretrial motion that included a request for several pretrial hearings. At those hearings, he ably cross-examined police witnesses. Counsel also effectively cross-examined the state's witnesses at trial, and in his closing argument, he systematically pieced together evidence that benefitted petitioner and undermined the state's case. Counsel's trial strategy was to convince the jury that co-defendant Divine Sawyer was the sole perpetrator and that petitioner was not present when the crime was committed. Counsel suggested that petitioner was implicated because he was well-known to neighborhood residents and police officers. Given the overwhelming weight of evidence against petitioner, counsel's strategy was sound. He could not reasonably have been expected to do more.

Petitioner contends that his attorney was ineffective for failing to call a bus driver who was passing the crime scene at the time of the shooting and who had failed to identify petitioner in a lineup. The record shows that petitioner's counsel was clearly aware of this witness and decided, as a matter of strategy, not to call him. Counsel told the court that the witness's testimony did not "have any probative value whatsoever." (Tr. 1012.) This conclusion is understandable given that, when the bus driver was called in the trial of Divine Sawyer, he conceded on cross-examination that

13

he had not had an opportunity to see the perpetrators' faces at the time of the incident. Petitioner's counsel, along with counsel for petitioner's brother, made a deliberate strategic decision not to call a witness, whose testimony was of questionable probative value and made absolutely no difference in the trial of Divine Sawyer. Counsel did not act unreasonably by failing to call this witness.

Petitioner next complains of his trial counsel's failure to request a jury charge on intoxication. In New York, "evidence of intoxication of the defendant may be offered by the defendant whenever it is relevant to negative an element of the crime charged." N.Y. Penal Law § 15.25. Counsel may request a charge on intoxication, even if the charge is inconsistent with the defense put forth at trial. See People v. Butts, 72 N.Y.2d 746, 750, 536 N.Y.S.2d 730, 533 N.E.2d 660 (1988). The inquiry is "not whether the claimed defense was consistent with the defendant's testimony or with other defenses raised, but whether that defense, viewed separately, was supported by the trial evidence." Id. "A charge on intoxication should be given if there is sufficient evidence of intoxication in the record for a reasonable person to entertain a doubt as to the element of intent on that basis." People v. Perry, 61 N.Y.2d 849, 850-51, 473 N.Y.S.2d 966, 462 N.E.2d 143 (1984). "The evidence of intoxication, sufficient to warrant the instruction under the Perry standard, may include evidence that defendant's mental capacity has been diminished by intoxicants but it need not in all cases. The charge may also be warranted if the record contains evidence of the recent use of intoxicants of such nature or quantity to support the inference that their ingestion was sufficient to affect defendant's ability to form the necessary criminal intent." People v. Rodriguez, 76 N.Y.2d 918, 920-21, 563 N.Y.S.2d 48, 564 N.E.2d 658 (1990).

The trial testimony did reveal that petitioner smelled of alcohol at the time of the offense and

14

appeared to be drunk when he arrived at the police precinct later in the night. Petitioner testified to drinking five beers within a short period of time, and the prosecutor essentially conceded in her summation that petitioner was drunk on the night of the crime. Still, none of this testimony suggests that petitioner's intoxication came close to the level necessary to affect his ability to form the criminal intent to murder. See Cotto v. Lord, No. 99-cv-4874, 2001 21246, at *17 (S.D.N.Y. Jan. 9, 2001). In fact, none of the trial testimony suggested that petitioner's mental capacity was at all diminished due to his consumption of alcohol. Any such claim is belied by the eyewitnesses' trial testimony. Immediately before the fatal shooting, petitioner subdued two individuals. When asked by Divine Sawyer to "to hand him the gun," petitioner readily complied. After the shooting, petitioner fled the crime scene, apparently more effectively than his brother and Divine Sawyer, who were both apprehended minutes after the incident. These facts, which graphically demonstrate petitioner's unimpaired ability during the commission of a crime to reflect, organize, and carry out his criminal objectives, defeat any defense of intoxication. See Brown v. Rick, No. 01-cv-4310, 2003 WL 22801397, at *5-6 (S.D.N.Y. Nov. 25, 2003) (noting, in rejecting habeas claim based on counsel's failure to request intoxication charge, that the petitioner spoke coherently and was aware of the nature of the offense); Rosa v. Donnelly, 99-cv-12021, 2001 U.S. Dist. LEXIS 21190, at *19-20 (S.D.N.Y. Dec. 20, 2001).

Petitioner's counsel reasonably concluded that an intoxication defense had no chance, and further, that it would have been an unsound strategic move to request an intoxication charge that was inconsistent with the claimed defense. Acencio v. McKinney, No. 05-cv-1026, 2007 WL 2116253, at *14 (E.D.N.Y. Jul. 20, 2007) (noting in case where petitioner asserted alibi defense that an

intoxication charge "would have been irrelevant and confusing to the jury"); Santos v. Greiner, No. 99-cv-1545, 1999 WL 756473, at *10 (S.D.N.Y. Sep. 24, 1999) ("Failure to raise an intoxication defense that is inconsistent with other defenses is not sufficient to support an ineffectiveness claim."). It is quite understandable that trial counsel may have determined, as a matter of strategy, that an intoxication charge inconsistent with the claimed defense "could . . . undermine[] the reliability of petitioner's testimony." Marchese v. Senkowski, No. 97-cv-2055, 1999 WL 731011, at *14 (E.D.N.Y. Sep. 15, 1999). Counsel, therefore, was not constitutionally ineffective for failing to pursue an intoxication defense or to request an intoxication charge.

In sum, having reviewed the trial transcript, this Court finds no ground upon which an ineffective assistance of counsel claim could arguably lie. As such, the state courts' rejection of petitioner's claim undoubtedly satisfies the deferential standard of review imposed under AEDPA.

## Conclusion

For the reasons set forth above, the petition of Mark Jones for a writ of habeas corpus is dismissed. Because petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability shall not issue with respect to any of petitioner's claims. 28 U.S.C. § 2253(c)(2).

**SO ORDERED.**

Dated: Brooklyn, New York
September 6, 2007

ERIC N. VITALIANO
United States District Judge

16